UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ANNIE L. ALLEN and EAMON WALSH,** | ) ) ) |
| Plaintiffs, | ) ) Civil Case No. ) **2:21-CV-01425-AKK** |
| v. | ) ) |
| **USAA CASUALTY INSURANCE COMPANY,** | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Annie Allen and Eamon Walsh turned property over to T's Treasures in exchange for a percentage of the sale proceeds, but they never heard from the company again. After unsuccessfully filing a theft claim with USAA Casualty Insurance Company, Allen and Walsh filed this lawsuit against USAA for allegedly denying their claim in bad faith. *See* doc. 1-1 at 4–5. In addition to damages for the property they lost to T's Treasures, Allen and Walsh seek attorney's fees and punitive damages. *Id.* at 6.

The court has for consideration USAA's motion to dismiss the claim for attorney's fees on the basis that "none of the special circumstances that allow for the recovery of attorneys' fees [under Alabama law] are applicable in this case." *See* doc. 3 at 1–2. Allen and Walsh have responded to the motion, doc. 6, and USAA

has replied, doc. 7. For the reasons expressed herein, in particular because dismissal would be premature at this juncture, the motion is due to be denied.

## I.

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This does not require "detailed factual allegations," but it does demand more than "unadorned" accusations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012).

If a complaint fails to state a claim upon which relief can be granted, the court must dismiss it. FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient facts, taken as true, to state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678; *Resnick*, 693 F.3d at 1325. "Plausibility is the key, as the well-pled allegations must nudge the claim across the line from conceivable to plausible." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (internal quotation marks omitted). A facially plausible claim "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 555 U.S. at 678. The

court draws from its "judicial experience and common sense" to resolve this context-specific inquiry.  *Id.* at 679; *Resnick*, 693 F.3d at 1324.

## II.

Allen and Walsh, a married couple, apparently entered into an "Estate Sales Agreement" with T's Treasures in June of 2019 to sell certain property as they downsized to a smaller home.  *See* doc. 1-1 at 3.  Under the agreement, T's Treasures would sell items of Allen's and Walsh's personal property, retain a percentage of the proceeds, and remit the rest of the money to Allen and Walsh.  *Id.*  But after the following month, when T's Treasures took possession of the property, Allen and Walsh never heard from the company again.  *See id.* at 4.  Allen and Walsh believe that T's Treasures stole their property, which amounted to $91,175.00, by using the agreement as "a ruse" to enter their home.  *Id.*

Allen and Walsh filed a claim with USAA, the holder of their homeowner insurance policy, based on the apparent theft.  *See id.*  USAA denied the claim, purportedly relying on the meaning of "theft" as used, though not defined, in the policy.  *See id.* at 4–5.  Allen and Walsh subsequently requested an inquiry through the Alabama Department of Insurance, but this did not change USAA's decision.  *Id.* at 4.  Next, Allen and Walsh, through their counsel, sent USAA a letter requesting reconsideration and asserting that USAA "was using a narrow definition of the term

'theft' which is not otherwise defined in the [p]olicy" to deny their claim. *See id.* at 5. USAA, however, reaffirmed its position, and this lawsuit followed.[1] *Id.*

### III.

Allen and Walsh allege that USAA acted in bad faith because USAA "create[d] its own debatable reason for denying [their] claim when the sole factual basis for that denial [was] itself subject to dispute." Doc. 1-1 at 5. Put another way, USAA allegedly engaged in bad faith because the insurance policy covers and does not define "theft," but USAA denied the claim by using a "narrow definition" that excludes theft "by deception." *See id.* at 4–5. According to Allen and Walsh, USAA's bad faith permits them to secure attorney's fees under Alabama's "special-equity" exception to the American Rule against shifting such fees. *See id.*; doc. 6 at 2–3. As one might predict, USAA asserts that this exception does not apply and that the court must dismiss the claim for attorney's fees. *See* doc. 7 at 4. The court turns first to the scope of the special-equity exception before addressing its application to the case at hand.

### A.

"[T]he traditional American [R]ule ordinarily disfavors the allowance of attorney's fees in the absence of statutory or contractual authorization." *Hall v. Cole*,

---

[1] Allen and Walsh first filed suit in the Circuit Court of Jefferson County, and USAA removed the case to this court, which now sits in diversity. *See* doc. 1.

412 U.S. 1, 4 (1973). *See also Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (noting that when courts consider attorney-fee awards, their "basic point of reference" is "the bedrock principle known as the American Rule"). However, litigants may recover attorney's fees "by special equity," that is, "when the interests of justice so require." *See Reynolds v. First Ala. Bank of Montgomery, N.A.*, 471 So. 2d 1238, 1241 (Ala. 1985) (quoting *Eagerton v. Williams*, 433 So. 2d 436, 450 (Ala. 1983)); *Hall*, 412 U.S. at 4–5. As the parties agree, neither statute nor contract authorizes the recovery of attorney's fees in this case. *See* docs. 3 at 1–2; 6 at 1. Thus, Allen and Walsh assert their entitlement to attorney's fees by special equity.

The "special equity" exception may apply when a litigant "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Hall*, 412 U.S. at 5 (internal quotation marks omitted); *Reynolds*, 471 So. 2d at 1241. "In this class of cases, the underlying rationale of 'fee shifting' is, of course, punitive, and the essential element in triggering the award of fees is therefore the existence of 'bad faith' on the part of the unsuccessful litigant." *Hall*, 412 U.S. at 5. Along this vein, "Alabama recognizes exceptions to the American Rule where fraud, willful negligence or malice has been practiced." *Reynolds*, 471 So. 2d at 1243.

1.

Cases help delineate the scope of this exception. In *Reynolds*, the Supreme Court of Alabama reversed the trial court, which declined to shift attorney's fees in

a class action filed by the beneficiaries of approximately 1,250 individual trusts against their trustee. *See* 471 So. 2d at 1244.[2] The Court noted that evidence demonstrated that the trustee "concealed the existence of its own written investment standards, violated its own written minimum standards of safety, attempted to conceal the holding of [trusts] under the heading of insurance, and attempted to conceal the fact that it had sold . . . stock at a loss . . . ." *See id.* at 1243. Recognizing an exception to the American Rule "where fraud, willful negligence or malice has been practiced," the Court held that "ample authority" justified "shifting . . . the litigation costs from the beneficiaries to their paid trustee" on this evidence. *Id.* at 1243–44.[3]

In *Smith v. GTE Corporation*, the Eleventh Circuit held that the plaintiffs' requested attorney's fees did not establish the amount in controversy required for diversity jurisdiction. 236 F.3d 1292, 1309 (11th Cir. 2001). In reaching this conclusion, the Circuit discussed the *Reynolds* special-equity exception as it applied to the plaintiffs' claims of fraud and the amount in controversy:

---

[2] Because the beneficiaries sought a declaration as to the trustee's duty, a declaration that certain investments were imprudent, and affirmative relief requiring the trustee to restore losses to the common trust fund, the Court remarked that the case "[was] essentially an equitable proceeding." *Id.* at 1241.

[3] The Court also explained that "special equity does not necessarily mean the spreading out of attorney's fees among the members of a class where a fund has been created," as counsel for the trustee had suggested. *Id.* at 1243. Rather, the Court held, attorney's fees "can be awarded . . . where there has been a fraudulent representation." *Id.*

6

> The Alabama Supreme Court has, on one occasion, recognized an exception to the American Rule where 'fraud, willful negligence or malice has been practiced.' However, the Alabama courts have apparently not extended the application of *Reynolds* beyond the facts of that case. Notably, the *Reynolds* court emphasized the case involved fraud on the part of a trustee which caused losses to the individual trusts of the class members, and thus, that the suit was 'essentially an equitable proceeding.' . . . this Court has not found[] any decision in the fifteen years since *Reynolds* where an Alabama appellate court has shifted attorney's fees to a defendant because it had committed fraud. For these reasons, we conclude that application of the 'fraud' exception alluded to in *Reynolds* is too speculative to serve as a basis for including an award of attorney's fees in determining the amount in controversy in this case.

*Id.* at 1309 n.16 (internal citations omitted).

Later, in *King Development & Realty, Inc. v. Eslami*, the Court of Civil Appeals of Alabama found an equitable basis for awarding attorney's fees where a corporate landlord "maliciously and in bad faith refused to accept rent payments" from its tenant "with the intent to declare [the tenant] in default and to terminate the lease so as to gain possession of the valuable refrigeration equipment that the tenant had installed on the leased premises." 964 So. 2d 51, 57–58 (Ala. Civ. App. 2007). The court noted that the landlord had acted in a "deliberate" manner "calculated" to terminate the lease—"tantamount to a finding of malice." *Id.* As a result, the court concluded there was "an equitable basis for awarding [the tenant] an attorney fee . . . because [the landlord's] bad-faith termination of the lease resulted in [it] being unjustly enriched." *Id.*

7

Some years later, in *Leonard v. Woodruff*, the Court of Civil Appeals of Alabama again held that the circuit court could shift attorney's fees under the *Reynolds* exception. 204 So. 3d 901, 905 (Ala. Civ. App. 2016). There, the court permitted the award of fees out of a litigant's share of an estate because the litigant was "responsible for unnecessarily relitigating . . . matters that had previously been decided and/or that could have been decided in previous . . . proceedings." *See id.*

Drawing on these cases, the Northern District of Alabama in *Muncher v. NCR Corporation* declined to dismiss a claim for attorney's fees where the plaintiff alleged that his employer wrongfully withheld his bonuses under an employment contract. *See* No. 2:16-CV-782-VEH, 2017 WL 2774805, at *1, *21 (N.D. Ala. June 27, 2017). "Assuming *Smith* and *Eslami* are typical of the facts necessary for an Alabama Court to award fees,"[4] the court determined, the facts pled in the case fell short. *Id.* at *21. However, because the court "[could not] foreclose the possibility that, at some point, *evidence* [could] arise which would allow such a recovery," and because the court "[was] not convinced that, for fee shifting to occur, it must be pled as a separate count," the court did not dismiss the attorney's fee claim. *Id.* (emphasis in original).

---

[4] Upon review of *Muncher*, it seems the court may have meant to cite *Leonard*, instead of *Smith*. *See id.* at *20–21 (describing *Leonard* and *Eslami* as the "two reported Alabama cases, since *Smith*, where courts have awarded attorneys fees based on the exception set out in *Reynolds*").

8

Finally, several years after *Muncher*, the Supreme Court of Alabama held that the trial court justifiably awarded attorney's fees against a trustee. *Foster v. Foster*, 304 So. 3d 211, 221 (Ala. 2020). First, the Court noted that "when a defendant has committed fraud, willful negligence, or malice or otherwise has acted in bad faith, the trial court may, in its discretion, shift the cost of attorney fees to the successful party." *Id.* Because the trustee engaged in "misfeasance of his fiduciary duties," failed to cooperate with court-ordered accounting, and unduly protracted the litigation, the Court concluded that the trial court could shift the attorney's fees. *Id.*

2.

These cases suggest that Alabama's special-equity exception is somewhat narrow in its scope and application. *See Smith*, 236 F.3d at 1309 n.16; *Muncher*, 2017 WL 2774805, at *21. Simultaneously, however, the cases reveal that Alabama permits the shifting of attorney's fees where a litigant has "committed fraud, willful negligence, or malice or otherwise has acted in bad faith," apparently either before or during the litigation. *See Foster*, 304 So. 3d at 221; *Leonard*, 204 So. 3d at 905; *Eslami*, 964 So. 2d at 58. With this understanding, the court proceeds to apply the exception to the instant motion.

B.

Allen and Walsh contend that the special-equity exception applies because USAA acted in bad faith when it denied their claim based on a narrow definition of

9

"theft." *See* doc. 6 at 2.  In support, they cite case law holding that when an insurer "create[s] its own debatable reason for denying the plaintiff's claim," as USAA allegedly did here, the insurer acts in "abnormal bad faith." *See id.* (citing *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 306 (Ala. 1999)).  In response, USAA asserts that the exception does not apply because the *Reynolds* case "was 'essentially an equitable proceeding'" involving a class action for declaratory judgment, as contrasted with Allen's and Walsh's common-law tort action.  *See* doc. 7 at 2.  USAA also claims that "a finding of bad faith may be based only on conduct related to the litigation," and here, any bad faith "form[s] the basis of the cause of action itself." *See id.* at 3 (citing 6 J. Moore, Federal Practice ¶ 54.77[2] (2d ed. 1972); *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004 (11th Cir. 1985)).

Though USAA accurately notes that the *Reynolds* Court highlighted the equitable nature of that case, USAA fails to address the other Alabama cases permitting attorney's fees awards under the special-equity exception in the face of different forms of bad faith.[5]  *See Foster*, 304 So. 3d at 221; *Leonard*, 204 So. 3d at

---

[5] USAA cites *Woods* for the proposition that "[t]he bad faith or vexatious conduct must be part of the litigation process itself" for the court to depart from the American Rule. *See* doc. 7 at 3; *Woods*, 765 F.2d at 1014.  But *Woods* dealt with shifting attorney's fees for bad faith in a federal securities case, not under Alabama's *Reynolds* exception. *See id.*  Moreover, "[i]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto . . . should be followed." *Smith*, 236 F.3d at 1305 n.13 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 259 n.31 (1975)).  Following Alabama case law, the court is not persuaded that Alabama requires bad faith to "be part of the litigation process itself" in order to shift attorney's fees.

905; *Eslami*, 964 So. 2d at 58.  Here, Allen and Walsh allege bad faith that, at least in their view, necessitated the lawsuit; they believe USAA denied their insurance claim in bad faith and consistently relied on an overly narrow understanding of their policy to support its decision.  *See* doc. 1-1 at 4–5.  The couple has thus laid the groundwork for the recovery of fees.[6]  Future evidence may also support a finding of fraud, willful negligence, malice, or bad faith.  *See Muncher*, 2017 WL 2774805, at *21.[7]  As a result, dismissal of the attorney's fee claim would be premature.

### IV.

In sum, while it remains to be seen whether Allen and Walsh can successfully establish that USAA acted in bad faith and whether, depending on the facts that emerge, they can obtain attorney's fees, the court declines to dismiss their claim for attorney's fees at this juncture.  USAA's motion, doc. 3, is **DENIED**.

---

[6] *Cf. N. Assurance Co. of Am. v. Bayside Marine Constr., Inc.*, No. 08-222-KD-B, 2009 WL 151023, at *6 (S.D. Ala. Jan. 21, 2009) (dismissing a claim for attorney's fees under Alabama law because the litigant sought fees only because of the other party's "unwarranted behavior," which "[did] not equate with an allegation of fraud, willful negligence or malice sufficient to invoke the equity exception").

[7] *See also SE Prop. Holdings, LLC v. Judkins*, No. 1:17-CV-00413-TM-B, 2019 WL 177981, at *10 (S.D. Ala. Jan. 11, 2019) (awarding attorney's fees under the Alabama Fraudulent Transfer Act *after trial* but noting that, even without this provision, "Alabama precedent allows for recovery of attorneys' fees in the presence of 'fraud, willful negligence or malice,'" which was also present in that case).

11

**DONE** the 3rd day of January, 2022.

                                                            **ABDUL K. KALLON**
                                          UNITED STATES DISTRICT JUDGE