# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ANNIE L. ALLEN, et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| v. } | Case No.: 2:21-cv-01425-RDP |
| } | |
| **USAA CASUALTY INSURANCE** } | |
| **COMPANY,** } | |
| } | |
| **Defendant.** | |

## MEMORANDUM OPINION

This matter is before the court on Defendant's Motion for Summary Judgment (Doc. # 20). The Motion has been fully briefed (Docs. # 24-26), and is ripe for decision. For the reasons discussed below, the Motion is due to be granted.

Plaintiffs Annie Allen and Eamon Walsh filed a Complaint against their homeowner's insurer, USAA Casualty Insurance Company ("USAA" or Defendant) in the Circuit Court of Jefferson County, Alabama. (Doc. # 1-1). Defendant removed the case to this court. (Doc # 1). The Complaint contains one count asserting an "Abnormal Bad Faith Claim Denial" Claim. (Doc. # 1-1 at 5). Plaintiffs' claim in this case relates solely to the homeowner's policy[1] on the Hoover, Alabama property. (Doc. # 20-1 at 53:1-18).

---

[1] In response to Defendant's Motion for Summary Judgment, Plaintiffs assert for the first time that they had two insurance policies with Defendant at the time of the theft, which provided them with overlapping coverage. (Doc. 25, at p. 4). However, Plaintiffs' Complaint mentions nothing about any policy other than the homeowner's policy on the Hoover, Alabama property. (Doc. # 1-1). "A plaintiff may not [] 'amend' his complaint at the summary judgment stage by raising a new claim." *Ganstine v. Sec'y, Fla. Dept. of Corr.*, 502 F. App'x 905, 909–10 (11th Cir. 2012); *see also Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (A plaintiff may not amend his complaint in response to a motion for summary judgment.). The Court therefore declines to consider the newly asserted policy.

I.      **Relevant Undisputed Facts**[2]

In June 2019, Plaintiffs lived in in a home in Hoover, Alabama. (Doc. # 1-1 at ¶¶ 3, 7-9). Plaintiffs put the home on the market and intended to downsize. (*Id.* at ¶¶ 7-10). Plaintiffs had a homeowner's policy with Defendant covering their home in Hoover, Alabama during the period of time when they lived there. (Doc. # 1-1 at ¶¶ 9, 17).

On June 26, 2019, Plaintiffs entered into an "Estate Sales Agreement" with T's Treasures ("T's") to conduct an estate sale at their home and thereafter sell items from the home on a consignment basis. (*Id.* at ¶ 7, Doc. # 20-1 at 2-8). Under the agreement, T's would sell items of Plaintiffs' personal property, retain a percentage of the proceeds, and remit the net proceeds to Plaintiffs. (Doc. # 1-1 at ¶¶ 7-12). On July 10, 2019, T's took possession of the remaining unsold property at issue. (*Id.* at ¶ 13, Doc. # 20-2 at 42:7-12, 49:5-9, 52:8-17). Plaintiffs intended that T's would be removing any unsold items from the house on July 10, 2019 because the house needed to be empty for the sale, and because T's was to sell or consign the remaining items. (Doc. # 20-2 at 41:15-42:12, 55:7-18).

Plaintiffs cancelled their homeowner's policy with Defendant at the time the house was sold. (Doc. # 20-5 at 81). On July 18, 2019, Defendants issued a "Cancellation Notice to Insured" on the policy listing a "cancellation date" of July 11, 2019. (*Id.*).

On August 1, 2019, Plaintiff Annie Allen received a text message from T's to call at her convenience. (Doc. # 20-1 at 77:17-78:6). T's asked for Plaintiffs' new address because she had the proceeds from the sale and said she was going to send a check. (Doc. # 20-1 at 78:4-19). On

---

[2] The facts set out in this opinion are gleaned from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the non-moving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

August 17, 2019, T's texted Plaintiffs to say she was balancing her checkbook and had noticed that they had not cashed the check. (Doc. # 20-2 at 79:12-23). On August 18, 2019, Plaintiffs responded that they had not received a check. (Doc. # 20-2 at 80:4-81:6). Plaintiffs did not recall any further written communications with T's between September 2019 and February 2021. (Doc. # 20-2 at 81:17-83:2). Plaintiffs never received payment for the items from T's, nor did they receive the items back. (Doc. # 20-1 at 23:19-24:6, 42:7-12).

Plaintiffs considered a theft to have occurred at some point between the date T's took possession of the property on July 10, 2019 and the end of the year. (*Id*.).

On December 31, 2019, over five months after the policy was canceled, Plaintiffs made a claim of theft relating to the items removed from the house by T's on their homeowner's policy on the Hoover, Alabama house. (Doc. # # 1-1 at ¶ 19). Prior to that date, Plaintiffs had not reported any alleged theft to the police. On January 6, 2020, Plaintiffs filed an incident report with the Hoover Police Department regarding the missing items. (Doc. # 20-3 at 2). The Hoover PD declined to prosecute. (Doc. # 20-6 at 2). A detective explained that he had spoken with an Assistant District Attorney, and that the DA's office and the Hoover PD "looked at this case as being a civil matter even though the victim wanted it to be pursued criminally." (Doc. # 20-6 at 2),

On February 17, 2020, Defendant denied Plaintiff's Claim. (Doc. # 1-1 at ¶ 20). Plaintiffs filed a request for inquiry with the Alabama Department of Insurance (DOI) but that did not result in any change to Defendant's denial of the Claim. (*Id*. at ¶ 21). Defendant sent Plaintiffs a letter dated May 26, 2020 stating that the reason for the denial of the claim was that:

> Your claim isn't covered because the loss of your personal property does not arise to the definition of theft and therefore [] wasn't covered by any perils as listed in your policy. Furthermore, the policy does not provide coverage for civil issues.

(Doc # 20-4 at 2). That letter lists the date of loss as September 29, 2019. (*Id*.).

## II.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see* Fed. R. Civ. P. 56(c). The moving party must show the court that there is a basis for granting summary judgment, as well as point to the evidence contained in the pleadings that demonstrates an absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. When the movant has met its burden, Rule 56 requires the non-moving party to highlight specific facts beyond the pleadings (such as affidavits, depositions, interrogatory answers, or admissions on file) that show a genuine issue for trial. *See Id.* at 324.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (citing U*.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir.1991) (*en banc*). If the moving party bears the burden of proof at trial, then it can meet its burden on summary judgment only by presenting positive evidence that demonstrates the absence of a genuine issue of material fact; *i.e.*, facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

In making a determination as to which facts are material, a court is guided by substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Any reasonable doubts about the facts, or any justifiable inferences derived therefrom, are resolved in favor of the non-moving

party. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993); *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007). A dispute exists when "the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Anderson*, 477 U.S. at 248.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Thus, a court's inquiry in a Rule 56 motion is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

**III.  Analysis**

Plaintiffs' Complaint asserts only one claim: an "abnormal bad faith" claim. (Doc. # 1-1 at ¶ 26). The Eleventh Circuit in a published decision recently summarized Alabama law on bad faith:

> The Supreme Court of Alabama first recognized the tort of bad faith in the insurance context in *Chavers v. National Security Fire & Casualty Co.*, 405 So. 2d 1 (Ala. 1981). In *Chavers*, the Supreme Court of Alabama held that an actionable tort arises for an insurer's conduct where there is either (1) no lawful basis for the refusal to pay or (2) an intentional failure to determine whether or not there is any lawful basis for the refusal to pay. *Id.* at 7. Alabama courts often refer to refusal-to-pay claims as "normal" bad-faith claims and to failure-to-investigate claims as "abnormal" bad-faith claims. *See State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 256–58 (Ala. 2013). However, the Supreme Court of Alabama has emphasized that, although there are two "methods" of establishing bad faith, "there is only one tort of bad-faith refusal to pay." *Id.* at 257–58[].
>
> The tort of bad faith consists of the following essential elements: (1) a breach of an insurance contract; (2) a refusal to pay the claim; (3) the absence of an arguable reason for failing to pay; and (4) the insurer's knowledge of such an absence. *Id.* at 258. If a plaintiff is traveling under the failure-to-investigate theory—and thus is bringing an "abnormal" bad-faith claim—there is another essential element: (5)

"the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *Id*. (quoting *Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982)).

To be clear, *"[r]egardless of whether the claim is a bad-faith refusal to pay or a bad-faith refusal to investigate, the tort of bad faith requires proof of the third element[:] absence of a legitimate reason for denial."* *Id*. at 258; *see also McLaughlin v. Alabama Farm Bureau Mut. Cas. Ins. Co.*, 437 So. 2d 86, 91 (Ala. 1983) ("If any one of the reasons for denial of coverage is at least 'arguable,' this Court need not look any further."). In other words, a plaintiff traveling under either theory of bad faith "must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, *a nonpayment without any reasonable ground for dispute," otherwise the claim fails*. *Bowen*, 417 So. 2d at 183 []; *see also State Farm Fire & Cas. Co. v. Balmer*, 891 F.2d 874, 877 (11th Cir. 1990) ("[R]egardless of the imperfections of [an insurer's] investigation, *the existence of a debatable reason for denying the claim at the time the claim was denied defeats a bad faith failure to pay claim.*").

*Walker v. Life Ins. Co. of N. Am.*, 59 F.4th 1176, 1186–87 (11th Cir. 2023).

### A. Plaintiffs Have Not Alleged a Breach of the Insurance Contract

In their Complaint, Plaintiffs did not assert that Defendant breached the insurance contract. (Doc. # 1-1). "Alabama courts limit bad faith claims to cases where the underlying breach of contract claim is so strong the plaintiff is due a directed verdict." *Barnett v. Sun Life Assurance Co. of Canada*, 2022 WL 4596567, at *5 (N.D. Ala. July 18, 2022). "In other words, if there is a genuine dispute of material fact on the breach of contract claim, the bad faith claim must fail." *Id*. "This Court has explained that '[a]s a preliminary matter, a bad faith claim generally cannot succeed "if the evidence produced by either side creates a fact question with regard to the [breach of] contract claim."'" *Id*. (quoting S*mith Lake Marina & Resort LLC v. Auto Owners Ins. Co.*, 2017 WL 4167448, at *4 (N.D. Ala. Sept. 20, 2017) (in turn quoting *Thomas v. Principal Fin. Grp.*, 566 So. 2d 735, 745 (Ala. 1990))).

The fact that Plaintiffs have not asserted a breach of contract claim could be viewed as an admission that they did not have a breach of contract claim that was so strong as to warrant a directed verdict. Under Alabama law, in the context of an insurance claim, the insured bears the

6

initial burden of establishing insurance coverage by demonstrating that a claim falls within the insurance policy. *See Pyun v. Paul Revere Ins. Co*., 768 F.Supp.2d 1157, 1169 (N.D. Ala.2011) (internal citations omitted).

The undisputed facts establish that T's took possession of the property at issue on July 10, 2019 with Plaintiffs' permission. (Doc. # 20-2 at 41:15-42:12). Plaintiffs cancelled the policy effective July 11, 2019. (Doc. # 20-5 at 81). During of August 2019, Plaintiffs were in contact with T's about obtaining a check for the proceeds of the property T's had sold. (Doc. # 20-1 at 78:4-81:6). It appears, but it is not clear from the Rule 56 record, that Plaintiffs estimated the date of the loss to have occurred on September 29, 2019 (Doc. # 20-4 at 2), which is well after the policy was cancelled. Annie Allen's deposition testimony was a little more vague, and placed the alleged theft as having occurred at some point between the date the time T's took possession of the property on July 10, 2019 and the end of the year. (Doc. # 20-1 at 23:19-24:6, 42:7-12). Plaintiffs did not file a police report regarding the alleged theft until after they had already made a claim with Defendants. In light of these events, Plaintiff would not be entitled to a directed verdict on a breach of the insurance contract because there is *at least* a question of fact as to when the alleged theft occurred and whether the policy was in effect on that date.

Because there is a genuine dispute of material fact as to whether the insurance contract was breached, Plaintiffs' bad faith claim must fail for this reason alone. *See Barnett*, 2022 WL 4596567 at *5 ("a genuine dispute of material fact on the breach of contract claim [] is itself sufficient to defeat the bad faith claim as a matter of law." (citing *Thomas*, 566 So. 2d at 745)).

But there is more.

### B. Defendant's Reason for Denying the Claim Is At Least Debatable

It is undisputed that the policy at issue does not define theft. Plaintiffs argue that Defendant has provided shifting definitions of "theft," and therefore created their own debatable reasons for denying their theft claim. Annie Allen has provided her own definition of theft. Plaintiffs assert that the "theft" here fits within that definition. Therefore, Plaintiffs argue, Defendant's reason for denial is not debatable. (Doc. # 25 at 6-8).

"General rules of contract law govern an insurance contract." *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). "The court must enforce the insurance policy as written if the terms are unambiguous." *Id*. "Whether a provision of an insurance policy is ambiguous is a question of law." *Id*. "[T]he mere fact that a word or a phrase used in a provision in an insurance policy is not defined in the policy does not mean that the word or phrase is inherently ambiguous." *Id*. "A term is ambiguous only if, applying the ordinary meaning, one would conclude that the provision containing the term is 'reasonably susceptible to two or more constructions.'" *Id*. at 1144 (quoting *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 309 (Ala. 1999) ). To determine the ordinary meaning of an undefined term, the court should not use "technical, philosophical, or scientific meanings," but rather "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance." *Liggans R.V. Center v. John Deere Ins. Co*., 575 So. 2d 567, 571 (Ala. 1991) (citing Appleman, Insurance Law and Practice, Rev. Vol. 13, §§ 7383, 7384 (1976)).

Defendant "denied coverage in this matter because the Agreement between Plaintiffs and T's did not cause the facts of the case to fall under the category of theft." (Doc. # 20 at 13 (citing Doc. # 20-4 at 2)). There was a contract between Plaintiffs and T's. Under that agreement, T's took lawful possession of the property at issue -- with Plaintiffs' express permission -- for

consignment purposes. (Doc. # 20-1; Doc. # 20-2 at 42:7-12). Plaintiff Allen testified that she first considered their property to have been stolen "when we realized that we weren't going to receive and moneys or we didn't receive any of our property back so [] sometime prior to the end of the year of 2019, but I don't have a specific date." (Doc. # 20-2 at 23:19-24:6). During August 2019, Plaintiffs were communicating with T's about where T's could send a check with the proceeds of the sale and whether that check had been cashed. (Doc. # 20-1 at 77:17-81:6). Plaintiffs' written communications with T's ended around September 2019, which appears to have been the reported date of the loss. (Doc. # 20-4 at 2; Doc. # 20-2 at 81:17-83:2). And, Plaintiffs did not file a police report asserting that a theft had occurred until January 2020, after having made the claim of theft to Defendant. (Doc. # 20-3).

Defendant denied Plaintiffs' claim because it considered the agreement between T's and Plaintiffs to remove the property with Plaintiffs' permission and consign it to be distinguishable from a theft. An Assistant District Attorney and the Hoover Police agreed. They "looked at this case as being a civil matter even though the victim wanted it to be pursued criminally." (Doc. # 20-6 at 2).[3]

"Regardless of whether the claim is a bad-faith refusal to pay or a bad-faith refusal to investigate, [in both instances] the tort of bad faith requires proof of the third element, absence of legitimate reason for denial." *Brechbill*, 144 So. 3d at 258. In other words, "the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim." *Bowen*, 417 So. 2d at 183. "[T]he existence of a debatable reason for denying the claim at the time the claim was denied defeats a bad faith failure to pay claim." *Walker*, 59 F.4th at 1187 (quoting *Balmer*, 891 F.2d at 877).

---

[3] Indeed, conceivably, Plaintiffs could have sued T's under their written agreement or for conversion.

9

At the time they made their claim, Plaintiffs had not reported a theft to the police. Under the facts of this case, it is at least debatable or arguable that the situation did not constitute theft.[4] Because Defendant's stated reason for denying Plaintiffs' claim is at least debatable, Plaintiffs' abnormal bad faith claim fails as a matter of law.

**IV.    Conclusion**

For all of the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. # 20) is due to be granted. A separate order will be entered.

**DONE** and **ORDERED** this April 7, 2023.

*[signature]*
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[4] Moreover, although it was not a stated reason for the denial of the claim, the events over which Plaintiffs made their claim appear to have occurred after the policy had been cancelled.